# EXHIBIT 4

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LEBANON CHIROPRACTIC CLINIC, P.C.,
Individually and on behalf of all others similarly
situated,

    Plaintiff,

vs.

LIBERTY MUTUAL INSURANCE
COMPANY; LIBERTY MUTUAL FIRE
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA, and
SAFECO INSURANCE COMPANY OF
ILLINOIS,

    Defendants.

No. 14-L-521



FILED
ST. CLAIR COUNTY
FEB 2 3 2015
CIRCUIT CLERK

## FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT AND DISMISSING THIS ACTION WITH PREJUDICE

This matter came before the Court on the 17th day of February, 2015, on Plaintiff's Motion for Final Approval of Class Action Settlement, requesting final approval of the proposed Class Settlement memorialized in the corrected Stipulation of Settlement filed of record on October 30, 2014, and preliminarily approved by the Court on October 31, 2014. Having reviewed and considered all timely submissions made in connection with the proposed Settlement, having reviewed and considered the files and records herein, and having previously handled MedPay class actions presenting similar issues, the Court finds and concludes as follows:

1.     The Court has jurisdiction over the subject matter of this Action, the Plaintiff, the members of the Settlement Class, and Liberty.

2.     All capitalized terms used herein shall have the same meaning as set forth in the Stipulation, which is incorporated herein by reference.

3. The Complaint filed on June 25, 2014, alleges, among other things, that Liberty improperly used an undisclosed cost-containment program involving computerized bill-review systems and other elements to cap the amounts paid to medical providers and/or reimbursed to injured parties for medical treatments covered by the Medical Payments ("MedPay") coverage and/or Personal Injury Protection ("PIP") coverage provided by certain automobile policies issued by Liberty. The Complaint further alleges that Liberty's use of computerized bill-review systems to determine the usual, customary, or reasonable charge payable under the PIP and/or MedPay coverage provided by Liberty's personal automobile policies breached the terms of those policies, violated various consumer-protection statutes, and unjustly enriched Liberty.

4. Liberty has denied that it has acted improperly or fraudulently and has raised several affirmative defenses, including (without limitation) defenses based on (1) applicable statutes of limitations, (2) a prior class settlement of similar claims in a lawsuit styled *Froeber v. Liberty Mutual Insurance Company*, No. 00C15234 in the Circuit Court of Marion County, Oregon ("*Froeber*"), (3) a prior class settlement of similar claims in *Kerbs v. Safeco Insurance Company of America*, No. 10-2-17373-1 SEA in the Superior Court of King County, Washington (the "*Kerbs*"), and (4) settlements and judgments reached in individual disputes presenting similar claims in Illinois and other states ("Individual Disputes").

5. On or about October 30, 2014, Plaintiff and Liberty entered into a corrected Stipulation of Settlement, which Plaintiff promptly filed with the Court the same day. The Stipulation provides for the settlement of this Action between Liberty and a proposed Settlement Class, subject to Court approval.

6. October 31, 2014, the Court held a hearing to consider preliminary approval of the Stipulation and the proposed Class Settlement and granted such preliminary approval.

7.      For purposes of determining whether the terms of the proposed Settlement should be finally approved as fair, reasonable and adequate, the Court conditionally certified a Settlement Class consisting of the following Policyholder, Claimant, and Provider Subclasses:

   A.   The "Policyholder Subclass" is defined as every person who, on October 31, 2014, named as an insured in a "Subject Policy" that was in force on that date; "Subject Policy" means a personal auto policy:

   (i)   issued by "Liberty," which means Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, The First Liberty Insurance Corporation, Liberty Personal Insurance Company, Liberty Insurance Corporation, Liberty Lloyds of Texas Insurance Company, LM General Insurance Company, LM Personal Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company, General Insurance Company of America, First National Insurance Company of America, American States Insurance Company, American States Preferred Insurance Company, and/or American Economy Insurance Company;

   (ii)   delivered by Liberty or one of its agents to a policyholder in a "Settlement State," which means Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, Wisconsin and/or Wyoming; and

   (iii)   providing MedPay and/or PIP coverage;

   B.   The "Claimant Subclass" is defined as every person who, at any time during the Class Period,

   (i)   received "Covered Treatment," which means any medical treatment, medical service, medication, or prosthesis covered by the MedPay and/or PIP coverage provided by a Subject Policy,

   (ii)   submitted (or allowed another to submit on his or her behalf) a "Subject Claim," which means an insurance claim seeking payment under the MedPay and/or PIP coverage provided by a Subject Policy for Covered Treatment rendered during the Class Period, and

   (iii)   received from Liberty as payment or reimbursement for at least one Covered Treatment (through payments to himself, to herself, or to others on

his or her behalf) an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through the use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment.

C. The "Provider Subclass" is defined as every person who, during the Class Period,

(i) provided Covered Treatment to a member of the Claimant Subclass for a Covered Injury,

(ii) sought payment for that Covered Treatment under the MedPay and/or PIP coverage provided by a Subject Policy, and

(iii) received from Liberty as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through the use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment;

D. Provided, however, that the Settlement Class excludes all Class Counsel, all Released Persons, all Neutral Evaluators, all Illinois judges, and all persons who timely opt out of the Settlement Class in accordance with the Court's orders.

*See* Order Preliminarily Approving Class Settlement (entered October 31, 2014). In addition, the Court conditionally appointed Lebanon Chiropractic Clinic, P.C., as representative of the Settlement Class and the following attorneys as Class Counsel:

> Robert W. Schmieder II
> Bradley M. Lakin
> SL Chapman LLC
> 330 North Fourth Street, Suite 330
> St. Louis, MO 63102
> Phone: 314-588-9300

*Id.* The Court also approved the form of the parties' proposed Class Notice and the parties' proposed methods for distributing the Class Notice, directed that the Class Notice distributed in accordance with the terms of the Stipulation and the Court's orders, and scheduled a hearing to consider the fairness of the Settlement. *Id.*

000126

8. On or about December 2, 2014, the Court entered an Order Modifying Class Settlement Schedule, which modified the schedule for distributing the Class Notice and re-scheduled the fairness hearing to 9:00 am, Thursday, February 5, 2015. Then, on February 3, 2015, the Court issued an order granting the motion of Leon Demond to intervene as an additional Plaintiff and Class Representative and re-setting the fairness hearing to 10:00 am, Tuesday, February 17, 2015, to allow more time for consideration of opt-out requests arriving from areas of the country where recent snows delayed the mails.

9. On or about February 5, 2015, the Court considered the Notice of Objector's Effort to Obstruct and Joint Motion for Expedited Entry of Order Addressing Same (filed Feb. 4, 2015). Upon reviewing that Notice and Motion, the Court issued an Order Addressing Effort by Objector [David Kerbs] to Obstruct Proceedings in this Court (entered Feb. 5, 2015).

10. On or about February 10, 2015, Class Counsel applied to the Court for final approval of the terms of the Proposed Settlement and for the entry of this Final Judgment. In support of that application, Class Counsel submitted, among other things, evidence concerning the dissemination and adequacy of Class Notice, evidence regarding the names of potential Class Members who have submitted requests for exclusion from the Settlement Class, evidence regarding the negotiation of the Proposed Settlement, and evidence regarding the fairness, reasonableness, and adequacy of the substantive terms of the Proposed Settlement.

11. Pursuant to the Class Notice and the orders described above, a hearing was held before this Court, on February 17, 2015, to consider the motion for final approval and to determine whether the Proposed Settlement should be approved as fair, reasonable, and adequate and whether the Court should enter this Final Judgment approving the Settlement and dismissing the Action on the merits, with prejudice, and without leave to amend.

UU0127

12. During the hearing, the parties provided additional evidence that the Class Notice was disseminated in accordance with the Court's orders. In addition, the parties provided additional evidence regarding the adequacy of the notice so given, the negotiation of the proposed Class Settlement, the substantive fairness, reasonableness, and adequacy of its terms, and the identities of Potential Class Members who submitted timely Requests for Exclusion from the Settlement Class. The parties also presented evidence concerning objections filed by Dr. Gregory Gordon, Dr. David Kerbs, Ms. Kathleen Lipscombe, and Mr. Brian McNiff. And the parties also provided evidence that counsel of record for Dr. Gordon (and perhaps others) engaged in a coordinated effort to interfere with the Court's approved Class Notice plan by making misleading statements to potential members of the Provider Subclass in Massachusetts to induce them to opt out of the proposed Settlement.

13. The Court previously found and now reaffirms that dissemination of the Class Notice in accordance with the terms of the Order constitutes the best notice practicable under the circumstances. The evidence confirming dissemination and content of the Class Notice, including the testimony of the nationally recognized notice expert, Todd Hilsee, demonstrates that the parties complied with this Court's orders regarding class notice, that the notice given informed members of the Settlement Class of the pendency and terms of the proposed Settlement, of their opportunity to request exclusion from the Settlement Class, and of their right to object to the terms of the proposed Settlement, that the notice given was the best notice practical under the circumstances, and that it constituted valid, due and sufficient notice to members of the Settlement Class. The Court further finds and concludes that the notice program described in the Order and completed by the parties complied fully with the requirements of due process, the Illinois Rules of Civil Procedure, and all other applicable laws.

000128

14. The Court also finds that the Proposed Settlement is the result of good-faith, arms-length negotiations by the parties thereto. In addition, the Court finds that approval of the Stipulation and the Settlement embodied therein will result in substantial savings in time and resources to the Court and the litigants and will further the interests of justice.

15. The Court finds, for settlement purposes only, that the Settlement Class meets the requirements of 735 ILCS 5/2-801, because: (1) the Settlement Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact – *i.e.*, whether and how Liberty should disclose its bill-review practices – that are common to the Settlement Class and predominate over any questions affecting only individual members of the Settlement Class; (3) Plaintiff Lebanon Chiropractic Clinic, P.C., Plaintiff-Intervenor Leon Demond, and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and (4) the proposed Class Settlement is an appropriate method for the fair and efficient resolution of this controversy in light of: (a) the risk that prosecution of separate actions by individual members of the Settlement Class might establish incompatible standards of conduct for Liberty and (b) the propriety of an agreed injunction as a principal form of relief. Further, the Court finds that the Proposed Settlement is fair, reasonable and adequate as to the Settlement Class Members, the Plaintiff, and the Plaintiff-Intervenor as a result of discovery, due diligence, and the absence of material objections sufficient to deny approval.

16. In making the findings stated in paragraph 15, above, the Court incorporates and reaffirms the findings previously made in the Order Addressing Effort by Objector to Obstruct Proceedings in this Court (entered Feb. 5, 2015). In addition, the Court notes several important differences between the relief to be provided to members of the Settlement Class under the proposed Class Settlement (and the procedures prescribed by the Stipulation for providing that

relief) and the relief sought in similar cases in which class certification has been denied or reversed. For example, the Stipulation includes an agreement by Liberty to make payments to certain members of the Settlement Class without any finding (a) that Liberty breached any duty owed to any member of the Settlement Class or (b) that any member of the Settlement Class suffered any legally cognizable injury as a result of any such breach. Accordingly, the Stipulation eliminates the need to resolve the individualized issues of fact and law that lead the Appellate Court of Illinois to reverse the certification of a litigation class in a similar case in Madison County. *See Bemis v. Safeco Ins. Co. of America*, 948 N.E.2d 1054, 407 Ill. App. 3d 1164 (Ill. App. Ct.—5th Dist. 2011), appeal denied, 955 N.E.2d 468, 353 Ill. 1 (Ill. 2011). In addition, the Stipulation provides for prospective relief in the form of an agreed injunction (a) allowing Liberty to continue to use its computerized bill-review system and (b) requiring Liberty to make certain disclosures concerning its use of that system. These terms eliminate the potential conflict of interest cited by an Oregon court in finding that a medical provider had failed to establish its adequacy to represent the litigation class proposed in another similar action. *See Froeber v. Liberty Mutual Ins. Co.*, No. 00C15234, slip. op. at 4-7 (Cir. Ct. Marion Cty, Or. Feb. 26, 2004).

17. The Court finds that the Potential Class Members listed in Exhibits 1-4 hereto submitted timely Requests for Exclusion.

NOW, THEREFORE, GOOD CAUSE APPEARING THEREFOR, IT IS ORDERED, ADJUDGED AND DECREED THAT:

18. The Court hereby affirms the definition of the Settlement Class for purposes of this Final Judgment and certifies this Action, for settlement purposes only, as a Class Action.

000130

19. The persons listed on Exhibits 1-4 are excluded from the Settlement Class. Except as provided in paragraphs 39-40, below, Plaintiff, Plaintiff-Intervenor, all objectors, and all Potential Class Members other than those listed on Exhibits 1-4 are adjudged to be Settlement Class Members and are bound by this Final Judgment and by the Stipulation of Settlement incorporated herein, including the releases provided for in the Stipulation and in this Final Judgment.

20. The Court overrules all objections to the Stipulation and the proposed Class Settlement and approves all provisions and terms of the Stipulation and the proposed Class Settlement in all respects. The Court specifically finds that the proposed Class Settlement is fair, adequate, and reasonable for the Settlement Class. Liberty and the Settlement Class are ordered to consummate the Class Settlement in accordance with the terms of the Stipulation and this Final Judgment.

21. In light of the covenant in paragraph 28 of the Stipulation, the representations in the Notice of Objector's Effort to Obstruct and Joint Motion for Expedited Entry of Order Addressing Same (filed Feb. 4, 2015), the findings and conclusions stated in the Order Addressing Effort by Objector to Obstruct Proceedings in this Court (entered Feb. 5, 2015), the arguments and evidence presented and considered at the hearing on February 17, 2015, and the entire record before the Court, it is hereby ordered, adjudged, and decreed that Liberty shall:

    A. implement the following measures concerning Future Claims, *except as otherwise required by the final judgment entered in Kerbs on August 24, 2012*:

        (i) for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the charge billed by the Medical Provider (the "Billed Charge"), (b) the eightieth percentile charge for that Covered Treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth medical-charge database or another similar database (the "Eightieth Percentile Charge"), (c) the amount authorized by a state mandated fee schedule

9

or by another applicable law or regulation (the "Fee-Schedule Charge"), or (d) the amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party (the "PPO Charge");

(ii) for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall publish on the website libertymutual.com and safeco.com that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge;

(iii) for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall inform Settlement State policyholders in writing at the time of their initial purchase or renewal of a personal auto policy that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge; and

(iv) for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall inform Medical Providers in Settlement States who contact Liberty to confirm coverage of medical treatment under a personal auto policy that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge; and

B. pay the amounts described in paragraphs 37, 44-47, 55, 57, and 59-61 of the Stipulation, including payments to Class Members and the fees described in paragraph 36, below.

22. In light of the covenant in paragraph 29 of the Stipulation, the representations in the Notice of Objector's Effort to Obstruct and Joint Motion for Expedited Entry of Order Addressing Same (filed Feb. 4, 2015), the findings and conclusions stated in the Order Addressing Effort by Objector to Obstruct Proceedings in this Court (entered Feb. 5, 2015), the arguments and evidence presented and considered at the hearing on February 17, 2015, and the entire record before the Court, it is further ordered, adjudged, and decreed that, *except as otherwise provided by the final judgment entered in Kerbs on August 24, 2012*, Liberty's payment of Future Claims in accordance with paragraph 21(A)(i), above, does not breach any

duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or reasonable charges for Covered Treatments.

23. It is further ordered, adjudged, and decreed that, *except as otherwise provided by the final judgment entered in Kerbs on August 24, 2012,* each and every Settlement Class Member is forever barred and permanently enjoined from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency, or arbitrator, any challenge of any kind to Liberty's payment of Future Claims in accordance with paragraph 21(A)(i), above.

24. And it is further ordered, adjudged, and decreed that, *except as otherwise provided by the final judgment entered in Kerbs on August 24, 2012,* each and every member of the Provider Subclass is forever barred and permanently enjoined from (a) disparaging or criticizing as unlawful or unfair Liberty's conduct concerning Future Claims in accordance with paragraph 21(A)(i), above; and/or (b) discouraging any person from purchasing insurance from Liberty because of its conduct concerning Future Claims in accordance with paragraph 21(A)(i).

25. Except as provided in paragraphs 39-40, below, this Action is dismissed in its entirety, on the merits, with prejudice and without leave to amend, and each and every Settlement Class Member is forever barred and permanently enjoined from starting, continuing, litigating, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative or regulatory proceeding or order based on or relating to the Released Claims.

26. Upon the entry of this Final Judgment, each Settlement Class Member shall be conclusively deemed to have fully released and discharged, to the fullest extent permitted by law, all of the Released Parties from all of the Released Claims.

000133

27. "Released Claims" means and includes any and all claims, rights, demands, actions, causes of action, suits, debts, liens, contracts, liabilities, agreements, interest, costs, expenses or losses arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by the Plaintiff, the Settlement Class, and/or any Class Member concerning any Subject Claim, whether at law, in equity, or under any statute or regulation, and including without limitation:

    A. any and all claims, demands, actions, causes of action, and/or suits for breach of contract, fraud, misrepresentation, consumer fraud, unfair trade practices, unfair insurance practices, unjust enrichment, and/or bad faith arising from or in any way relating to any Subject Claim,

    B. any and all claims, demands, actions, causes of action, and/or suits for direct damages, indirect damages, actual damages, consequential damages, punitive damages, and/or exemplary damages, declaratory or injunctive relief, prejudgment interest, post-judgment interest, costs, expenses, and/or attorneys' fees, whether statutory or non-statutory, arising from or in any way relating to any Subject Claim, and

    C. any and all Unknown Claims arising from or in any way relating to any Subject Claim;

provided, however, that the Released Claims do not include (i) any claim for enforcement of the Stipulation and/or this Final Judgment or *(ii) any claim preserved by paragraph 6 on pages 11-12 of the final order and judgment entered in Kerbs on August 24, 2012.* Further, the Released Claims do not include any individual (i.e., non-class) claims—other than the individual claim of Plaintiff Lebanon Chiropractic Clinic, P.C.—that were pending before any court, administrative agency, or arbitration panel on October 31, 2014.

28. "Unknown Claim" means any claim arising out of newly discovered facts and/or facts found hereafter to be other than or different from the facts now believed to be true. The Released Claims defined in paragraph 27 (and released through this Final Judgment as provided in paragraph 26) include Unknown Claims arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by the Plaintiff, by the

000134

Settlement Class, and/or by any Class Member. The Court finds and concludes that Plaintiff and Plaintiff-Intervenor, on behalf of themselves and all members of the Settlement Class, have expressly, knowingly, voluntarily, and validly waived the provisions of any state, federal, municipal, local or territorial law or statute (including, but not limited to, that of the District of Columbia) providing in substance that releases shall not extend to claims, demands, injuries, and/or damages that are unknown or unsuspected to exist at the time a settlement agreement is executed and/or approved by a court. Without limiting the foregoing in any way, the Court finds and concludes that Plaintiff and Plaintiff-Intervenor, on behalf of themselves and all members of the Settlement Class, have expressly, knowingly, voluntarily, and validly waived all rights under Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

29. "Released Persons" means (a) Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, The First Liberty Insurance Corporation, Liberty Personal Insurance Company, Liberty Insurance Corporation, Liberty Lloyds of Texas Insurance Company, LM General Insurance Company, LM Personal Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company, General Insurance Company of America, First National Insurance Company of America, American States Insurance Company, American States Preferred Insurance Company, and American Economy Insurance Company, (b) all of the past and present officers, directors, agents, attorneys, employees, vendors, stockholders, divisions, subsidiaries, and parents of any of the insurers listed in subparagraph 29(a), including without

000135

limitation Liberty Mutual Holding Company, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Group, Inc., and (c) all of the successors, assigns, and legal representatives of any of the entities listed in subparagraph(s) 29(a) and/or 29(b).

30. The names, addresses, policy numbers, and other data concerning Potential Class Members compiled by Liberty in effectuating the Proposed Settlement, the electronic data processing and other record keeping procedures and materials to be utilized by Liberty in identifying the Potential Class Members and effectuating Liberty's other obligations under the Stipulation and/or the Proposed Settlement, and all documents produced by Liberty to Class Counsel and/or other attorneys for plaintiff in this Action constitute highly confidential and proprietary business information. The confidentiality of all such information (the "Proprietary Information") shall be protected from disclosure as provided in paragraphs 31-32, below.

31. Except as permitted by paragraph 32, below, no persons other than Liberty's counsel and clerical personnel employed by Liberty's counsel, Class Counsel and clerical personnel employed by Class Counsel, and such other persons as the Court may order after hearing on notice to all counsel of record shall be allowed access to any Proprietary Information.

32. Within 30 days after the Effective Date, Class Counsel shall return to Liberty all Proprietary Information in their possession, custody, or control and any other documents (exclusive of documents filed with the Court) provided by Liberty to Class Counsel or anyone they employed or retained in this Action or any other similar action, and all copies thereof. Within 45 days after the Effective Date, Class Counsel shall deliver a letter to Liberty confirming their compliance with this paragraph. In the event that any Proprietary Information or documents have already been destroyed, Class Counsel will include in that letter the name and address of the person(s) who destroyed the Proprietary Information and/or documents.

000136

33. Class Counsel have stipulated, and the Court agrees, that any representation, encouragement, or solicitation of any person seeking exclusion from the Settlement Class or any person seeking to litigate any Released Claim with Liberty might place Class Counsel in an untenable conflict of interest with the class. Accordingly, Class Counsel shall not engage in any such representation, encouragement, or solicitation.

34. In discovery in this and other matters and in negotiation and review of the Stipulation, Class Counsel have received confidential information regarding Liberty's internal practices and procedures and Liberty's confidential financial information, including financial information compiled solely for purposes of negotiating and implementing the Stipulation and the Settlement. Class Counsel shall keep such information confidential and shall not use it or, unless ordered by a court after notice to Liberty, allow it to be used in any other litigation.

35. The Stipulation, the Settlement and this Final Judgment are not to be deemed admissions of liability or fault by Liberty, or a finding of the validity of any claims in the Action or of any wrongdoing or violation of law by Liberty. The Stipulation and Settlement are not a concession by the parties and, to the extent permitted by law, neither this Final Judgment nor the Stipulation of Settlement or any other documents, exhibits or materials submitted in furtherance of the settlement, shall be offered or received in evidence in any action or proceeding in any court, administrative panel or proceeding, or other tribunal, as an admission or concession of liability or wrongdoing of any nature on the part of Liberty or any other person.

36. Class Counsel shall receive attorneys' fees and costs in the total amount of $1,200,000.00. In addition, Plaintiff and Plaintiff-Intervenor shall receive an incentive fee in the total amount of $3,000.00 each. Liberty shall pay these amounts as provided in the Stipulation.

000137

37.  Matt Young, Matt Zittel, and Shane Moskop are appointed as Neutral Evaluators to carry out the duties and responsibilities set forth in paragraphs 39-40 and 54 of the Stipulation, the terms and conditions of which are hereby adopted and incorporated herein by reference. The Neutral Evaluators shall be discharged upon the Court's approval of the Final Report of Distribution. Neither Plaintiff, nor Liberty, nor the parties' counsel shall be liable for any act or omission of any of the Neutral Evaluators.

38.  As soon as reasonably possible after the completion of all payments to Eligible Class Members pursuant to paragraphs 54-55 of the Stipulation, the parties shall file with the Court a Final Report (together with a proposed order approving such report and discharging the Neutral Evaluator) indicating that distribution in accordance with the terms of the Stipulation and the Court's prior Order has been completed.

39.  This judgment finally adjudicates and dismisses with prejudice all claims that were asserted or could have been asserted herein on behalf of any of the persons or entities adjudged to be Settlement Class Members in paragraph 19, above, except the medical providers listed on Exhibits F and G of the Supplemental Affidavit of Kim Schmidt (filed Feb. 13, 2015) with mailing addresses in Massachusetts (the "Massachusetts Provider Subgroup"). Pursuant to Illinois Supreme Court Rule 304(a), the Court finds that there is no just reason for delay and expressly directs that this judgment be entered forthwith, without prejudice to the rights of the Massachusetts Provider Subgroup.

40.  Without in any way affecting the finality of this Rule 304(a) Final Judgment as to Settlement Class Members other than the Massachusetts Provider Subgroup, this Court shall retain continuing jurisdiction over this Action for purposes of:

    A.  Enforcing the Stipulation, the Class Settlement, and this Final Judgment;

      B.      Hearing and determining any application by any party to the Stipulation for a settlement bar order; and

      C.      Any other matters related or ancillary to any of the foregoing, including (without limitation) any dispute concerning the meaning or enforcement of any provision of this Final Judgment and any actual or alleged conflict between any terms of this Final Judgment and any terms of the final judgment entered in *Kerbs* on August 24, 2012.

In light of the evidence (described in paragraph 12, above) of a coordinated effort to induce Massachusetts providers to opt out of the Settlement Class, the Court retains plenary jurisdiction over all claims that were asserted or could have been asserted herein on behalf of any of the members of the Massachusetts Provider Subgroup, including (without limitation) jurisdiction to address the validity of requests for exclusion submitted by or on behalf of such members.

Dated: February 23, 2015.

_____
CIRCUIT COURT JUDGE